IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| -vs- | ) | Criminal No. 05-126 |
| | ) | |
| | ) | |
| FRANK SCHIRALLI, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

Conti, District Judge.

Pending before the court is a post-trial motion for judgment of acquittal (Doc. No. 55) filed by defendant Frank Schiralli ("defendant" or "Schiralli") pursuant to Rule 29(c)(1) of the Federal Rules of Criminal Procedure.

*Background*

On May 3, 2005, the grand jury returned an indictment charging defendant with two counts of making false declarations before a grand jury in violation of 18 U.S.C. § 1623, which provides in pertinent part that "[w]hoever under oath . . . in any proceeding before . . . any court or grand jury of the United States knowingly makes any false material declaration [is guilty of a crime]." Count One charged defendant with making a false statement by denying before the grand jury that he put pressure on sheriff employees to purchase tickets to fund-raising events. Count Two charged the defendant with making a false statement by denying before the grand jury that he kept a list, or an any fashion recorded, those employees who bought tickets to fund-raising events and those employees who did not. The false statements set forth in Count Two

1

were as follows:

> Q: Is it your recollection that you kept a list of the employees who reported to you, who asked for tickets and those who did not ask for tickets?
> A: No.
> Q: Did you, in any fashion, record which of the employees who worked for you asked for tickets and which did not ask for tickets?
> A: Not that I recall, sir.
>
> [and]
>
> Q: Did you ever see any lists maintained by anyone identifying who had bought campaign fund-raising tickets and who had not?
> A: No, sir.
> Q: You had never seen such a list?
> A: No.

Indictment at 4.

A jury trial of this matter began before this court on August 22, 2005. At the close of the government's evidence, defendant made a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The court reserved decision on the motion pursuant to Rule 29(b), and the defendant thereafter put on his case. At the conclusion of defendant's case, defendant again proffered a Rule 29 argument and the court again reserved its decision. The jury subsequently found defendant not guilty as to Count One of the indictment and guilty as to Count Two of the indictment. This post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c)(1) followed.

Defendant contends in his post-trial motion that the evidence presented by the government at trial was insufficient to prove beyond a reasonable doubt the elements of the charge at Count Two. Defendant argues, specifically, that with respect to Count Two (1) the government failed to establish materiality with regard to defendant's statements to the grand jury;

(2) the word "kept" in Count Two of the indictment caused confusion and ambiguity for the jury, and the government failed to establish the meaning of "kept" sufficiently for the jury to determine the truthfulness of the alleged falsehoods and their materiality; and (3) the jury's acquittal of the charge against defendant at Count One of the indictment calls into question the materiality of the statements underlying the charge against defendant at Count Two. The court addresses each of these arguments in turn.

### *Standard of Review*

The United States Court of Appeals for the Third Circuit has articulated the standard of review for ruling on a motion for judgment of acquittal: "In ruling on a motion for judgment of acquittal made pursuant to Federal Rule of Criminal Procedure 29, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence.'" United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (citing United States v. Smith, 294 F.3d 473, 476 (3d Cir.2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir.2001)). "A finding of insufficiency should be 'confined to cases where the prosecution's failure is clear.'" Id. (citing Smith, 294 F.3d at 477 (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir.1984)).

The court heeds the warning in Brodie that "[c]ourts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." Id. (citing United States v. Jannotti, 673 F.2d 578, 581 (3d Cir.) (en banc) (trial court usurped jury function by deciding contested issues of fact), cert. denied, 457 U.S. 1106 (1982); 2A Charles A. Wright, FED. PRAC.

& PRO. (Criminal 3d) § 467 at 311 (2000) ("A number of familiar rules circumscribe the court in determining whether the evidence is sufficient . . . . It is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence.  These are functions of the jury.")).  The court, accordingly, reviews the record in the light most favorable to the prosecution to determine whether any rational trier of fact based upon the available evidence could have found proof of the defendant's guilt beyond a reasonable doubt as to the charge at Count Two.

*Analysis*

**A. Materiality**

First, defendant contends that the government failed to establish the materiality of the defendant's statements to the grand jury with respect to Count Two.  Materiality is an essential element of the charge contained in Count Two of making false declarations before the grand jury. See 18 U.S.C. § 1623; see also Johnson v. United States, 520 U.S. 461, 465 (1997) ("[T]here is no doubt that materiality is an element of perjury under § 1623.").  Materiality, in addition, is a question for the jury.  Johnson, 520 U.S. 461, 464 (1997) (citing United States v. Gaudin, 515 U.S. 506 (1995), for the holding that the materiality of a false statement must be submitted to the jury rather than decided by the trial judge).

For the purposes of 18 U.S.C. § 1623, materiality is defined as a statement's "effect or tendency to impede, influence, or dissuade the grand jury from pursuing its investigation." United States v. Devitt, 499 F.2d 135, 139 (7th Cir. 1974), cert. denied, 421 U.S. 975 (1975).  See also United States v. Lardieri, 497 F.2d 317, 319 (3d Cir. 1974) (defining materiality for purposes of the general perjury statute, 18 U.S.C. § 1621, as having "a tendency to influence,

impede, or hamper the grand jury from pursuing its investigation," and stating that the standard is the same under § 1621 and § 1623) (citing <u>United States v. Cohn</u>, 452 F.2d 881 (2d Cir. 1971), <u>cert</u>. <u>denied</u>, 405 U.S. 975 (1972); <u>United States v. Stone</u>, 429 F.2d 138 (2d Cir. 1970)).

Defendant argues that the government failed to adduce sufficient evidence at trial to establish the scope and purpose of the grand jury's investigation in order that the jury could find that defendant's false statements were material to the grand jury's investigation. Defendant points in particular to the testimony of government witness Special Agent Steiner. Defendant concedes that Special Agent Steiner "testified on direct examination that the grand jury was looking into allegations of misuse of campaign funds, pressure to donate to fund raisers, and whether lists were kept." Defendant's Post-trial Motion at ¶ 15. Defendant argues, however, that Special Agent Steiner's knowledge as to the scope of the grand jury investigation was based on hearsay and third party information without proper foundation or information as to the basis of his knowledge, and as such, his testimony at trial regarding the scope of the investigation was not competent evidence. <u>Id.</u> at ¶ 12-14.

Defendant notes specifically that Special Agent Steiner joined the investigation just one day before he interviewed defendant and based his understanding of the scope of their interview on a meeting he attended the day before the interview. <u>Id.</u> at ¶ 13 (quoting excerpt from trial transcript ("Tr.") at 14). Defendant also argues that although Special Agent Steiner testified on direct examination that the grand jury was looking into allegations of misuse of campaign funds, pressure to donate to fund raisers, and whether lists were kept, on cross-examination he testified that his discussions with defendant were consistent with his 302 report, and his 302 report reflects that he told the defendant that he was investigating ticket sales for Mother's Day and

5

golfing events.  Id. at ¶ 12-14.  Defendant submits that Special Agent Steiner's testimony, while permitted to explain his understanding of the scope of the grand jury investigation, is improper evidence to submit to the jury for the jurors to reach a conclusion about the scope of the investigation, and asserts that any testimony from other witnesses who testified before the grand jury in no way defines or establishes the scope of the investigation.  Id. at ¶ 16.  These arguments, however, are to no avail.

First, Special Agent Steiner's testimony regarding his understanding of the scope of the grand jury investigation was properly admitted at trial.  Tr. at 5-7.  See also United States v. Farnham, 791 F.2d 331, 333 (4th Cir. 1986) (the testimony of two agents assisting grand jury along with the introduction of the defendant's grand jury testimony was sufficient to show materiality).[1]  Further, defendant was able to cross-examine Special Agent Steiner regarding his

---

[1] In United States. v. Farnham, 791 F.2d 331, 333 (4th Cir. 1986), the United States Court of Appeals for the Fourth Circuit explained that "[t]raditionally, the government can establish the scope of the grand jury investigation by one of three methods: obtaining the testimony of a grand juror as to the nature of the investigation, United States v. Byrnes, 644 F.2d 107 (2d Cir.1981); introducing a full transcript of the grand jury proceedings, United States v. Cosby, 601 F.2d 754 (5th Cir.1979); or having the attorney who presented the case to the grand jury testify. United States v. Berardi, 629 F.2d 723 (2d Cir.), cert. denied, 449 U.S. 995 (1980)."  The court in Farnham noted that, although in that case "[c]oncededly, the government used none of these means," the United States Court of Appeals for the Fifth Circuit had recognized that "traditional methods are not the only means of establishing the scope of the grand jury's investigation." Id. (citing United States v. Thompson, 637 F.2d 267, 269 (5 Cir.1981)).  The Farnham court also noted that in an earlier case the United States Court of Appeals for the Fourth Circuit itself had "implicitly subscribed to the view that any evidence tending to show the scope of the investigation is competent to establish materiality" and "held that the introduction of the defendant's grand jury testimony, coupled with the testimony of another grand jury witness as to the nature of the questions asked of her, sufficed to establish the scope of the grand jury's investigation." Id. (citing United States v. Bailey, 769 F.2d 203, 204 (4th Cir.1985)).

familiarity with the scope of the grand jury investigation and any objections with respect to his familiarity would go to the weight of the evidence. Tr. at 14-15. Here, in the context of a Rule 29 motion, where the court reviews the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based upon the available evidence, the court must take care not to usurp the jury's role in assigning weight to the evidence. Brodie, 403 F.3d 123, 133.

Second, defendant's argument that Special Agent Steiner's testimony on direct examination that he told defendant he was interviewing defendant about various fund-raising tickets conflicted with both Special Agent Steiner's testimony on cross-examination that his discussions with the defendant were consistent with his 302 report and Special Agent's Steiner's 302 report, because that report reflects that he told defendant that he was investigating ticket sales for Mother's Day and golfing events, is similarly unavailing. The jury had before it, inter alia, all of Special Agent Steiner's testimony and Special Agent Steiner was cross-examined about the inconsistency (Tr. at 15-16). The jury could appropriately assess the weight and credibility of his testimony. It is the province of the jury to weigh credibility and assign weight to the evidence, and the court will not substitute its judgment for that of the jury. Brodie, 403 F.3d 123, 133.

Finally, defendant's argument that any testimony from other witnesses who testified before the grand jury in no way defines or establishes the scope of the investigation is similarly without merit. The testimony of other witnesses before the grand jury is appropriate evidence that goes to the scope of the grand jury's investigation, and thus can aid a jury in determining materiality. See, e.g., United States v. Bailey, 769 F.2d 203, 203-4 (4th Cir. 1985). The

government is correct that, taken together, Special Agent Steiner's testimony, the transcript of the defendant's grand jury testimony, and the testimony of other witnesses before the grand jury constitute sufficient evidence to support the jury's finding of materiality.

**B. The Definition of "Kept"**

Second, defendant contends that the word "kept" in Count Two of the indictment caused confusion and ambiguity for the jury, and that the government failed to establish the meaning of "kept" in the indictment sufficiently for the jury to determine the truthfulness of the alleged falsehoods and their materiality. Defendant argues that the jury was confused about the definition of "kept" as evidenced by the jury's question to the court during deliberations, and in particular, that the jury was confused about whether "kept a list" meant "made a list" or "made and retained a list."[2]

While an indictment charging a person with making false statements to a grand jury must set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods, the United States Court of Appeals for the Third Circuit "ha[s] held that '[a]s a general rule, the fact that there is some ambiguity in a falsely answered question will not shield

---

[2] The body of the jury's written question to the court, which was addressed to the court and signed by the foreman, read in full: "For clarification, when the question of Count II has arisen, we need to understand the prosecutions [sic] question. When the defendant is asked if he 'kept a list,' does it mean compiling a list or does it mean that he compiled a list and retained it?" Tr. at ___. The court, after conferring with counsel, responded: "The jury needs to review the jury instructions which were given by the court and are in your possession." Tr. at ___. The jury instructions made clear that words contained in the testimony set forth in the indictment "should be given their common and ordinary meaning unless the context shows that a different meaning was understood by both the questioner and the witness." Tr. at ___. (The court has required that the relevant portions of the transcript concerning these events be ordered; the court will issue an addendum to the opinion containing the citations to the transcript.)

the respondent from a perjury or false statements prosecution. . . .'" United States v. Reilly, 33 F.3d 1396, 1416 (3d Cir. 1994) (quoting United States v. Ryan, 828 F.2d 1010, 1015 (3d Cir. 1987), abrogated on other grounds by United States v. Wells, 519 U.S. 482, 486 n. 3 (1997)). See also United States v. Slawik, 548 F.2d 75, 86 (3d Cir. 1977); United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir 2003) (discussing ambiguity and citing Slawik and Ryan). As the court of appeals explained in Reilly:

> Normally, it is for the petit jury to decide which construction the defendant placed on the question. . . . It is difficult to define the point at which a question becomes so ambiguous that it is not amenable to jury interpretation. We have stated that the point is reached "when it [is] entirely unreasonable to expect that the defendant understood the question posed to him". . . . Other courts have said that "[a] question is fundamentally ambiguous when it 'is not a phrase with a meaning about which [persons] of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'"

Id. (internal citations omitted). Here, as in Reilly, under either construction of the standard for ambiguity, it is clear that the questions posed to defendant were not so ambiguous that they were no longer amenable to jury interpretation.

First, the court instructed the jury in its final charge that "the words used should be given their common and ordinary meaning unless the context shows that a different meaning was understood by both the questioner and the witness." Tr. at ___ (see note 2, supra). A rational factfinder could have concluded that, given the common and ordinary meaning of "kept," and the lack of evidence that it was given a different meaning in the context of the questioning of defendant during his grand jury testimony, that there was no ambiguity. In addition, the government is correct that there was substantial evidence at trial that defendant "kept" lists under *either* of the definitions of "kept" proffered as potential definitions by the defendant in his post-

9

trial motion.

Second, as the government points out, defendant does not claim any ambiguity regarding the other two false statements contained in Count Two of the indictment—that defendant "in any fashion, record[ed] which of the employees who worked for [him] asked for tickets and which did not ask for tickets" and that defendant "ever [saw] any lists maintained by anyone identifying who had bought campaign fund-raising tickets and who had not." Taken together, these questions are amenable to jury interpretation. A rational factfinder could have found that defendant had "kept" a list in light of defendant's grand jury testimony and the court's instruction to assign to words in defendant's grand jury testimony their common and ordinary meaning.

Defendant relies on United States v. Tonelli, 577 F.2d 194, 198-200 (3d Cir.1978), in which the court held, inter alia, that an indictment charging the defendant with false declarations before a grand jury that he had not personally "handled" the transmission of one or more pension fund checks was defective because the defendant was not asked if he had "handled the transmission" of checks but if he had "handled" the checks. In that case subsequent questions made clear that the defendant had answered the question, whether opportunistically or not, to mean "handled" in the sense of physically "touched." The court determined because it was clear that the defendant had interpreted the prosecutor's questions about "handling" to mean "touching," and because the defendant retreated from his denial of "handling," saying he might have "touched" the check, that "[a]t this point, if the prosecutor intended the word 'handle' to mean other than 'touch,' it was his responsibility to rephrase the questions." Id. (citing Bronston v. United States, 409 U.S. 352 (1973).

Defendant contends that the word "kept" in this matter provides similar confusion and

ambiguity as "handled" did in <u>Tonelli</u>.  <u>Tonelli</u>, however, is distinguishable.  Where in <u>Tonelli</u> the context of the questioning of the defendant in that case during grand jury testimony made clear that the defendant had inadvertently or opportunistically interpreted "handling" narrowly, here, the other two false statements contained in Count Two of the indictment if anything clarified the meaning of "kept" as it applied to the charge.  Because there was sufficient evidence offered at trial to support a jury's determining the common sense meaning of "kept" as it applied to the charge, defendant's argument that use of the word "kept" caused ambiguity and confusion sufficient to warrant vacating the conviction is without merit.

**C. The Effect of Acquittal of Count One on Conviction on Count Two**

Third, defendant contends that the jury's acquittal of the charge against defendant at Count One of the indictment calls into question the materiality of the statements underlying the charge against defendant at Count Two.  In particular, defendant argues that if defendant was not found to have pressured deputies into buying fund-raising tickets then the issue whether the defendant maintained lists of who bought tickets is no longer material.

The government responds that the jury did not make a finding that defendant did not pressure deputies, but merely found the defendant not guilty at that count.  Further, the government argues that defendant failed to explain any reasons, and argues that there are none, why an acquittal on Count One has any effect on the validity of the jury's verdict of conviction on Count Two, citing <u>United States v. Berardi</u>, 629 F.2d 723, 729 (2d Cir. 1980) ("Acquittal on one of several adequately pleaded specifications [of false statements before a grand jury] will not therefore preclude conviction on others . . . . It hardly bears noting that the jury's not guilty verdict as to the first specification does not render its guilty verdict on the second legally

insupportable") (citing United States v. Ford, 603 F.2d 1043, 1047 (2d Cir. 1979) ("even plainly inconsistent jury verdicts, simultaneously rendered are the jury's prerogative.")).

Both of the government's points are well taken. The jury could have independently found defendant guilty at Count Two, but not guilty at Count One. The split verdict is not plainly inconsistent, and given the evidence sufficient to support the guilty verdict at Count Two, the acquittal at Count One does not undermine the jury's finding of guilt as regards Count Two.

## *Conclusion*

Reviewing the record in the light most favorable to the prosecution, the court finds that any rational trier of fact could have found proof of guilt beyond a reasonable doubt on the charge at Count Two of the indictment. United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005). Defendant's post-trial motion for judgment of acquittal (Doc. No. 55), therefore, is DENIED.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
U.S. District Judge

Dated: November 30, 2005

cc: Counsel of Record